-Judge Underwood,
delivered the opinion of the court.
Austin and others as partners, having obtained a judgment in the federal court, for the Kentucky district, against Edmund Searcy and Robert ’Thurston, caused án execution against their estates t© ¡issue thereon, which was levied by Chapman Coleman, deputy for John T. Mason, on a brick house and lot in the town of Port William, bought by Searcy, from A. Chippyabd by said Searcy given up to .the marshal. No sale of the property having been effected under ■the-original execution, a venditioni exponas issued on the. 11th of June, directed to the marshal, commanding him- to expose the estate to sale. This writ •on the next day, was placed in the handsof N. Loughery, deputy for Chapman Coleman, who, it seems, had *409 mcceeded Mason as marshal for the district. Loughery, in July, sold said house and Jot with other property in New Castle, when Austin, &c. by their agent, became the purchasers. Thereafter, said Loughery executed a deed of conveyance to Austin, &c. who, •upon their title thus derived, instituted an action of -ejectment against Winslow for the purpose of evicting him from said house and' lot. They succeeded, and Winslow prosecutes this writ of error.
Act of Congress of 1800, authorizes a suci ceding marshal to finish the incomplete business of bis predecessor.
By the.common law, a sheriff, who commences the execution of a judgment, must complete it.
By an act of Congress of 1795, marshals and their deputies are vested with the same powers lor the. execution of the laws of the United rotates, as sheriffs ami their depu’ics in the several stales have by Jaw in executing the laws of their respective states. Act of 1790, requires the deputy sheriff, untier train of a forfeiture of f-'-l 0 to subscrihe kis own as well as that of his principal, to his return of any wiit of execution or other process, when he has served it.
*409 It is contended by the plaintiff in error, that the deed executed by Loughery is void upon its face, and should have been execluded. Three grounds are relied on;
1st. That the execution having been levied while Mason was marshal, he should have completed the sale and conveyance.
2d. That the deputy cannot convey in his own name, •¿he deed-in this case being executed and entered into, between N. Loagiier), deputy marshal for Chapman '■Coleman, marshal of the United States, in and for •the district of Kentucky, of the one part, and Austin, &c. of the other, and signed and sealed by N Lo.ughevy as deputy, instead of by Coleman the marshal. And,
3d. That the sale being made in-New Castle, instead «/ Port William, renders the sale and conveyance null.
The first .ground of objection is obviated by the act of congress, approved, May 7th, 1800; see III Yol. Laws U. States, page, 370-1. By this act, the succeeding marshal is to finish the business not completed by his predecessor. The doctrine in relation to sher¿ ííís is different. He, who commences the.execution .must complete it, Allen, &c. vs. Trimble, IV Bibb, 24, Trimble vs. Breckenridge, Ibid, 479. This is a principle .of the common law, but a different rule may be -prescribed for the government of the state and federal officers by the proper legislature. It has been done in. this instance.
The second: ground of objection, is one of more difficulty. The 27th section of the act of congress to establish the judicial courts of the United States, provides for the appointment of marshals and their deputies, (II Vol. Laws, U. S. 66.) Bv the 9th section of *410 an act of 179.3, marshals ánd their deputies are vested with the same powers in executing the laws of the United States, ns sheriffs and their deputies in the sev* eial states, have, by law, in executing the laws of the respective stales, (Í1 Yol. Laws, U. S. 481.) By an act of assembly of 1702, (II Dig. 1141.) the under sheriff or deputy, was requbed under pain of forfeiting ‡Í0, <o subscribe, as well his own name, as that of his principal to bis return, when he bad served any writ of execution or other- process. By the act of 1798, subjecting lands <o the payment of judgments, and to sale under executions, it is provided, that in ail sales of land, by virtue of an 'execution, the sheriff or other officer, shall convey the same to the purchaser &c. (! Dig. 315.) The foregoing an the only statute laws which .can bear upon the point within our knowledge, in the ease of Parker vs. Rett, Salk. 95, Holt, Chief justice,declared,“that a deputy could not have less power than his principal. And, if the principal make the deputy covenant that he will not do any particular thing which the principal may do, the covenant is void."’ in the, same case, it. is said “though an under sheriff mu=t act in the name of the high sheriff, because the writs are directed to the high sheriff, arrd for other particular reasons; yet any other deputy may act either in his own name or- the name of Iris principal.” In a marginal note to this case, it is said, “a deputy may act, either in his own name or that of his principal/’ This principal seems to be laid down without limitation, and I Roll. Abr. 930, and 9 Co. 76, are referred to in support of it. Jacob defines a deputy to be “one who exercises an office in another man’s right.” Now, the question is, whether a deed executed in the name of N. Lougherv, deputy for Chapmau Coleman, marshal, &c. is good, or is it void because it was not executed in tbc name, of Chapman Coleman, marshal, &c. by N. Loughery, deputy? If the doctrines settled in the case of Parmer vs. Respass, V Monroe, 566, be applicable to tire present case, tire deed is not sufficient; but we think there is a striking distinction between the execution of a naked power or bare authority, created by a letter of attorney, which was that caso and the execution of official duties or power's conferred by operation of law, in consequence of being an officer of the law, which is the present case. *411 All the power possessed by the principal, cannot reside in the deputy, unless the latter can sell land under exe* cution and convey it to the purchaser as well as the former. That the deputy may sell and convey, is not questioned, but the manner of his doing it, gives rise to the difficulty. If he is restricted in the maimer, it will operate to diminish his power', and then it will iollow, that he is not equal. To give equal powe»-, seems to require, that he should he unrestricied as to the manner, further than positive statutes or adjud.cnüons'require it. The act, requiring the undo' she.iff to subscribe his own name as well as his principal’s to a return, does not render the thing performed void, in case of omission so to subscribe, but merely imposes a penalty. Much less, does the act render the t.dng done void, unless the signing is done in a particular manner. It would astonish many experienced sheriffs and deputies, to declare the service of a writ void, and reverse judgments rendered, because the deputy may have signed the return, A B, deputy for C I), sheriff, insiead C T) sheriff, by A B, deputy. The act of assembly, requiring the names of both to be subscribed, does not point out the order in which it is to be done, and, therefore, either mode should be regarded as sufficient. The act requiring the sheriff or other offic r selling lands, to convev to the purchaser, provides, that it shall be done “in writing, indented, sealed and recorded, as the law directs for oilier conveyances of land, winch deed shall recite the execution, purchase and consideration, and shall be effectual for passing io the purchaser all the estate and interest which the dehor had, &c.v A deputy sheriff is not lherallyand strictly speaking, the sheriff. A deputy, as well as the coroner, may therefore, be embraced by the expression olh v offic ;r, who is authorized to convey: and if he does so in writing, indented, ed and recorded, reciting the execution, purchase and consideration, the deed so, executed, must he efféctual under the statute. Now, all this has been done, and it is shown, that it was done by Loughery in his official character as deputy, in discharge of the duties of his office. From the existence of these things, the title passes by operation of law, and not upon the principle of a contract obligatory upon Searcy, and which, when reduced to writing, must assume that form, which will show, that he promised, or in terms showing that he con *412 veyed, when executed by an agent. Otherwise, it e the promise or' conveyance of the agent, and whatever may be said about his being attorney in fact, shows merely,, that the agent undertakes personally for his principal, or tbat it is added, by way of description. There is no pretext for urging, that Loughery undertook to bind himself or his principal, Coleman. The whole transaction on its face, is official. We, therefore, deem the objection to the manner of executing the deed unavailing; sec Reardon vs. Searcy’s heirs, II Bibb, 202.
Act of 1798, which subjects lands to "saleunder ex oculion, provides, that on all sales of land under execution, the sheriff or other officer shall convey the same to the purchaser. Act of r/9¿, which retó subscribe 'ris own name, as., oT^^ii-iocipal, to a return on an ex-o°her°orooess does not ren-’ der the thing "ertormed ofofauomission by the deputy ®l> to subscribe a writ signed ■ B depusheriir"’ a" sufficient.
a deputy shwiff or a coroma-y00f by him under execution,
when land has been sold deputy deed to the purchaser signed by the deputy marshal, is valid.
Tfie marshal or his deputy, may sell land without the limits of the county in which it lies, provided, he-has written-directions from the defendant in the execution, authorizing him so to do.
The third objection is likewise untenable. It was clearly shown that Searcy assented to the sale, and directed that it should take place in New Castle. The act of 1792, (I Dig. 515,) directed-sheriffs to sell lands on the premises, or at such other place as the owner shall, by writing under his hand delivered to the officer direct. Such a writing in this case was given, directing the deputy-marshal to sell at New Castle. The marshal’s jurisdiction extending to the limits of the state under such authority, would be authorized to sell .the lands any where within the state, at the place designated,® the same manner that a sheriff might sell any where within his county..
It is urged in argument, that congress never adopted the laws of this state, subjecting lands to the payment of debts as a part of the execution system of the federal courts, for the district of Kentucky, and therefore,. the whole proceeding by the marshal and his deputy, is void. It is also said, that if it be true, that the federal court for the Kentucky district, has, by its- rules,, adopted the laws of Kentucky, subjecting lands to the payment of debts,, and it were lawful for it to do so, still tins court cannot judicially know of the existence of any such rules, and therefore, the sale of the marshal, cannot be sustained. The answer to this reasoning, is to our minds satisfactory and obvious. On examining the transcript of the record of the federal court, we find, that the execution which was the marshal’s' authority, issued against the estate of Searcy, there-is nothing in the laws of Kentucky, which exempts that part of Searcy’s estate, now the subject of controversy, from the payment of his debts by execution and sale; it would, thei efore,be assuming a revising *413 power over the proceedings of the federal court and its oiiicers, if wc should declare that the execution improperly issued against .the estate, when it should have issued against tue goods and chatties of the debtor only. The preservation of the harmony of our complex system, so essential to the well being of ail the . • mericau people, requires great caution, in avoiding conflicts between the state and national authorities. To secure this desirable end, the best rule which can be adopted, is to regard the proceedings of both state and national tribunals as valid and lawful, and to give effect to accordingly, unless they are dearly inconsistent with some settled principle of the tribunal .called on to entorce them. Now, instead oí the proceedings oí the federal court in subjecting Searcy’s .land to the payment of the judgment against him, being, inconsistent with any thing in our system, they accord with it, and therefore, we regard il as our duty, resulting from, the strongest political reasons, and not opposed by any legal consideration, to consider the execution as having properly issued against the estate of Searcy* and consequently, that the marshal had a right to sell his lands in virtue of it. If congress had never by any act, expressly adopted the execution laws of the several states, would it thence follow, that the federal courts could notissue an execution at all upon a judgment, rendered in one of them? If they could issue an execution, upon what could it be levied ? These are questions of magnitude, which we deem it unimportant now to discuss. For whether the federal courts have the right and power to enforce their judgments by execution, unless conferred by express statute or not; or whether this tribunal under any circumstances would sanction the sale of estate exempt from execution by the laws of the state, when such sale is made under an execution issuing from a court of the United States or not, it cannot be doubted that the federal courts have authority to issue executions; and whenever the proceedings under any such execution, are in conformity to the laws of the state, there can be no reason why an officer or court of the state should consider them null and void, If these views are correct, there is but little weight in the objections to the sale made by the marshal. Whatever weight they are entitled to, they should have been presented to the consideration of the federal couri, *414 there to correct the proceedings if erroneous. They come loo late ¡¡ere.
The proceodingsof the statotribu-11 are valid and lawful, ?nd Wll( them accordingly, unless, ci,?ai.]a/jncon sistent with some settled the^SbuivU cai¡eií on \Q enforce them,
^urtsAaiic* authority to 'lsf"e ncm^heneverthe proceedings ' under any conformity to the laws of reason, why an officer or 111 ® consider then, void.
Mills and Brown, for plaintiff; Monroe,- for defcm dants.
Wjiislow was the tenant of Searcy. His possession of the land was prima f;ci” evidence of title and authorized t' .e sale, as has been decided in Campbell vs. Roberts, &c. III Marshall, 623, and in several subse-qent cases.
We concur with the circuit court for the reason assigned by that court, that Winslow was not entitled to notice to quit.
Judgment affirmed with costs.

The counsel for the plaintiffs in error, presented the. following p< titii.n for a re-htaring.

■ The novelty of the two questions on which this case is decided, would of itself, be a sufficient apology for asking a re-consideration. But when to this is added the lirm conviction of counsel, C. at the side taken by the court, in their disputed points is incorrect, and that they exceed airy previous decision, the excuse will be-still greater.
The first is, that the deputy sheriff has a right to convey hi his own name, and not that pf his principal, and this is made to turn on t.ie construction of the words “other officer,■’ in the statute. It is correctly admitted by the court, tuat the statu,e means ,.he sheriff himself, and we admit that die sheriff can do this act by another acting in his name, and by the authority of the sheiill’s office alone. Vve are a*rare of the dicta in the books, (we say dicta, for they are no more,) that the deputy may act in his own name. But we do not apprehend that they mean more than that he may exhibit his own name, and not say that the act is done by him. But if they mean more, we do deny that it will fill a statute winch requires a slier ff. The consequence is statutory only, and strips t e party of his title. The act must, th-.refore, be complied whh, and the very officer must convey, either b) himself or deputy, or no title passes. '1 he bond of the sheriff req uires imperiously as well as his oath, that he must make due exects *415 don and return of all process or precepts to him directed or delivered, by himself or deputy, and does not allow the deputy to do it himself. Tae sheriff ought not, and cannot, therefore, be liable for an act done by the deputy only. All our statutes have been construed to mean the sheriff himself, and not his deputy, whenever the sheriff is named; hence statutes aut.borizbg motions against the, sheriff, were held not to authorize motions against the deputy, and this produced the act of Assembly, II Dig. 1144, Sec. 6. which made deputies liable for the first time; see I Marsh. 429, 430.
But the court say, that the words, “other officer,” •will do. Th : court admits ibis is done to include the coroner, the s ibstitute for the sheriff; for he is really an officer. But it is denied that, officer, can mean a deputy, under our constitution and laws; for if he be an officer, ho is one unknown íotheconsíitulion, and one that becomes such against the constitution itself; for the constitution requires that tiie governor shall.nominate all officers whose offices shall he established by the constitution or created bylaw, whose appoinbnents are not provided for in the constitution itself. Now if the deputy sheriff is an officer, within the meaning of oar statutes,then he has crept into office not in the mode pointed out by the constitution, nor by the action of the govern- or and senate, and is, therefore, an exotic which ought to be expelled. It is believed a statute cannot be .found, which calls a deputy sheriff an officer, or indeed any other whose appointment is not provided for in the constitution. Thus we are able to prove that statutes naming a sheriff, means the sheriff himself, and not his deputy, and that the deputy sheriff is not an officer; for it would be wrong to convict the legislature of calling a person an officer, when by the fundamental law of the land he cannot be one.
We pass on, however, to the next and more important point, and that is, the propriety of this court assuming that a marstial has a light to execute a law of this state by authority of his office. The court seems to think it absurd to suppose, that the federal court has no power to issue executions. Wc do not suppose any such thing. We admit it lias the power, but in some of the states, lands are not subject to sale by fieri facias. This is the case'in Virginia. Would the power to *416 issue execution simply, in the federal courts, authorize him to make the sale of lands in Virginia, when the state law forbids it? Congress might probably pass such Ja-w, hut never did. We contest the right of the marshal to do so, ’without such act of congress. In this state, equitable titles for land, stock in bank, or olhei incorporated company, dioses in action, and sundry articles reserved to a failing debtor, are not subject to sale by a fieri facias, (although a chancellor may direct: some of the articles to be sold.) If a sale under a federal court execution of these articles, were before this court, for adjudication, would this court say that the bare power in the federal court to issue execution, should be enough, until'the sale'was annulled by the federal court ?
But the federal court has a code for execution by act -of congress, which this court has not noticed, approved September 29, 1789, and found in Brown & Carey’s edition of the laws of the United States, Vol. II, page 72, it is provided, that “the forms of writs and executions (except their style and modes of process and rates, of fees,) in' the circuit and district courts in suits at common law, shall be the same in each state respectively, ns are now used or allowed in the supreme courts of the same.” This act was limited, but was continued by an act found in Brown & Carey, I VoL 101. Under this act the federal courts assumed and got their execution system, and being thus possessed of it, an act of congress continued the systems of the stales then adopted, by an act of May 8,1792; lngersoll, 383, ÍI Bacon, &c. 299; w uch declared perpetual the system or present modes of execution now (then) in use. Under this the system of the federal courts in Virginia, from which we were taken, executions were fixed; and we took them from Virginia. These acts were all passed before there was a federal court in Kentucky. But when such court was created here, the same power was given to it that belonged -to the federal courts of Virginia, or of the other states. Thus, the United ¡States courts here had a system of execution, and could not transcend it. What system was this? It was the system of September, 1789, in Virginia, which excluded the sale of lands by fieri facias. Tor the first act adopted the system now (then) in force; and this *417 was the system entailed upon Kentucky, except the co iris have adopted ot iers by legislating through themselves. Tais is not speculation merely, but is solemnly settled by the supreme court itself, in X Wheaton, a book on Much we cannot lay our hands; we think the case is Southard & Star. It is, then, no longer a question that the federal courts of Kentucky were bound by the laws of Virginia of .1789, as their code of execution, and could not go beyond it, and lands could not be touched under or by any act of congress in existence. Si low then, did the federal courts of Kentucky get hold of our system of selling lands by fi-ri fwias? It was by rule making, if at all. The questions then recur, had they power to make such rules? and if they hare, and do make them, is this court bound, to take judicial notice of them unless produced? We admit this courtis bound to take judicial notice of an act of congress, but are they bound so to notice federal court rules of practice, known in the clerk's office and no where .else? As to the first question, we insist on the negative, and that this court ought to decide it. It has often been publicly discussed, and this court is as well informed thereon as we can be. We admit that the supreme court has a strong squinting at the existence. of i he power in the cases alluded to in X Wheaton. dut to the second question, we cannot help again respectfully, but seriously, to recaí the attention of the court.
This court has seen in this execution, the word “ estate” and from thence the court would seem to infer ■the necessary power. Suppose the words “ goods and chattels” had been used, would it thence follow that all goods and chattels ought to be taken? We know that many kinds of chattels, such as equities, credits, and chattels adversely possessed, and exempted estate, can-no! he taken under our code. Hence it follows that all are not embraced, and it as clearly follows that from the word w estate,” lands are necessarily embraced in a federal court execution, and it proves that we must look at the law of the land, and not the writ only, to see what can he executed. The court has seen !he force of this, and has measurably passed by the main question in the cause, by referring to the federal court tisis investigation, as too sacred to be touched here. Bui *418 in the mean iime this court enforces the proceeding*, and we lose our home. If this court cannot decide against this proceeding in the federal court, it would, seem that to place us on equal grounds, they ought not to decide in favor of it, and that the appellees ought to be sent to the federal court to enforce their proceedings, as well as the appellant to avoid them. If s ch proceedings can be given in evidence here, to injure us,it is singular to turn us to a foreign tribunal, to question them, and our mouths must he seah'd, when law and justice is to be administered, and the execution and rule to bo enforced.
We w-11 promise, in considering this question, that this con? t is ¿is much bound by and must notice, an act of congress, which applies to controversy before it, as it is by aíiy siatute of the state code. The constitution of the United States leaves no escape from this, by deda ing that the state judges shall be bound thereby, any thing in the State code noth withstanding. In doing so, this court must necessarily ascertain, what the acts of congress are, and construe and ascertain their meaning, as cleai ly as any oilier code. But this court is not thus bound by the rules, and only in some instances by the decisions of the federal courts.
Now let it be remembered, that the proceedings of the federal officers, who have seized and attempted to sell our lands, are the acts of ministerial officers only, the clerk in issuing, and marv.h.ii i;i executing this execution. Tuey are rot judicial, and have never been approved or disapproved by the federal court itself. Now we must say, that we have never found a case, where ministerial acts have been given in evidence collaiterally to support a right, but they mig't be objected to as inoperative for the want of o.uihority, and the court has held them to he inoperative,',unless the authority should he shown. The warrant fo fie marshal, by law, to sell these lands is demanded; our opponents cannot show it, nor can toe court find it; "et the court has said that we must go elsewhere to make the question, and cannot do it “ere. llave we not the same right, to - end the appellees elsewhere to support or enforce their acts?
The court has introduced the courtesy and respect, which ought to exist between the courts of our compli *419 caled system. Can the courts of tbe United States dé-tnand g-eater respect and confidence from the s.;ate coivts, than the circuit courtsof each .county are bound to pay each other? We will then go further, and suppose that it was a judicial proceeding of the federal court; the act or judgment of the court itself.given in evidence, could we not inquire into it, on the score of authority to do the act? We certainly coüld, and we assert that the rule is, that when any legal proceedings,, whether judicial orministerial, are given inevidence,the question of authority is inqubable into; and if in judicial proceedings, it is found that the court had jurisdiction, that/ is, that the subject matter was, by lazo, within the power of the court, the question ceases. If found not to be, then the proceedings are; rejected, however solemn they may be. In the case of Barbour vs. Breckenridge; IV Bibb, 548; the latter had bought Barbour's lands under an execution from the general court, and set up that sale to defeat an ejectment brought by Barbour,, who objected that the decree on which the execution issued, though expressly against Harbour, as heir of his father, did not warrant the sale of land descended from his father, being on a contract before land was liable. The circuit court of Jefferson disallowed the objection, as this court has done in this case. But this court reversed that decision, and directed that court to decide the sale invalid ab initio. Now we cannot see a greater impropriety in this court deciding on a like sale, under executiou from the federal court, than there was in the circuit court of a county, questioning a like sale by the sergeant under execution of the general court, which is superior to the circuit court. Indeed, if this court refuse to permit a sale under execution from the federal court, to be inquired into, but turn the party back to the federal court, and in the mean time holds the sale unquestionable here, and enforce it, it will clearly follow, that if a marshal sells notes, choses in action, bank stock, chattels in adverse possession, or lands held by executory contract, or equitable titles, such sales must he unquestionable in all the courts of this state, until questioned in the federal court, yea, and must be enforced in the mean time by the judgment (if this court.
What is more, this will be paying greater respect,. .and rendering more courtesy to the federal courts here, *420 than they relurn to the state courts. Scarcely a stale rcc0i’d and judicial proceedings are given in evidence there, but v/hat are excepted to, and if authority from the state laws is demanded, and not shown, such.proeeedings are set-aside as proving nothing and conferring no title. It is but lately that the proceedings in a court of Indiana was set aside there as conferring no title, because the officer had not pursued the laws of that state in selling and conveying the land. Ofen have we sc.cn decrees offered in evidence to sustain titles for land, and rejected because the process was not properly executed, or order of publication regularly-proved, and thus, judicial proceedings of the state-courts have there fallen, and yet ministerial proceedings from their officers and courts must he unquestionable, and he enforced to the loss of our homes!
In short, we assert the following to be a correct and unvarying rule; to make judicial records evidence collaterally, it must appear that the court where it was made or decided, had jurisdiction of the subject mutter- -and the. parties, and whenever the acts,of ministerial officers are given in evidence, it must appear that the officers had authority. This-rule is often named in Phillips, under the titles, public documents and judgments, and Starkie under the head of judicial proceedings sparsim,anil a detail of'authority is unnecessary.
How, then, are we siluated here? Theplaintiifbelow produces a sale and conveyance of our land by the officers of the federal court, made according, or similar in some degree, to our acts of assembly, subjecting lands to sale by fieri facias. We deny that those acts can apply to, or rule the federal courts, and that this code of ours confers no authority on the clerk and marshal. We; on the contrary, show that the several acts of congress have adopted, as a guide to the clerk and marshal, the execution code of Virginia of 1789, and refer to the decision of the supreme court establishing this point,.and' these show conclusively, that this code does not subject lands to the payment of debts, and, therefore,, it follows, that the marshal had no right to sell our lands under a judgment of the federal court. Here, to meet us, it might be expected that our adversary would say, that the federal court has got bold of the acts of Kentucky, and made it their code,by *421 rules of court,ina convenient mode of multiplying laws. We might then demand the rule, and see its operation. Eut, on the contrary, he does not even suggest a rule. AH be does is to produce an execution, which says “ estate” on its face, and rests on that as authority enough, and this court has held it enough, or, rather, has not let us, nor permitted themselves, to look into the rule-factory. The arcana of that shop is a secret, about which, we are told to go to the federal court and inquire, and if the execution says “ estate” it sh; J1 lie enough, the authority of making such an one shail not be questioned here, out of courtesy to the federal court! With due respect, we must insist that this principle, if carried out, would ultimately produce despotism. We have prided ourselves in. being able to inquire, without hesitation, into the authority of every oiiieer, the jurisdiction of every court, nay, we even inquire in:o the authority of all our legisla-ures, and if we find they have no authority, by the constituí'.on, to pass such act which operates upon our rights, without going back to the legislature to question it, we decide it inope-ative, that is, without authority. Now, is it possible teat there is any legislative,judicial,o-1 executive authority, in our government, that can do an act, and by affixing their names, can preclude us from questioning the act for the want of auhaority? If there be such, and respect or courtesy compels us to be silent and submissive, then where will this courtesy and respect terminate? The question which * e-make is one of authority, and the point is clear, that the marshal, unless the rules of court first can, and secondly has, given it to him. We do, therefore, insist that we have made the question properly and before a proper tribunal, where our private rights have been affected, and that there is no proper way of getting round it, without deciding that such rules have been made, without taking judicial notice of then existence, and then deciding that they conferred on the officer the power to sell our lands.
Under these firm convictions, we cannot help respectfully urging on the court a re-consideration of this case, and soliciting a re-hearing.
*422 The counsel for the def.n lants filed the. following reply to the petition for a re-hearing.
It cannot be necessary to introduce evidence to a jury to prove a general law in Kentucky; by whom*o~ ever, or in whatever manner it may have been made or now exists.
The supreme court of the United States have decided, and do hold it to be the law in the district and state of Kentucky, that lands were, at ti,e date of the transaction in question, subject to sale under executions of fieri facias issued from the federal courts in Kentucky, and the decisions of' that supreme court upon ti.e effect of the process of tiie courts of 'ho United States, ¡m ist necessarily, according to the organization of our government, be-conclusive on this and ail other state tribunals; any other doctrine would be nullification.
As to hów or by whom the law was made, or what is the mode of its existence, which authorized said sales of land, it cannot be necessary to inquire. It is immaterial whether it was the necessary consequence of the statutes of Kentucky alone, or of them and the acts of congress, or of all or a part of them, and the rules of court written or unwritten, taken together. Or whether it followed from these things or a portion of them, in conjunction with the alteration of the form of the writ of fieri fanas, whereby it is made to run against the whole estate in the stead of the goods and chattels, and I will not discuss the matter. It is sufficient, that the supreme court has decided that it was the lazo in the times of the transactions in question, that the land, in Kentucky was subject to sale under such process as we claim to have purchásed the land in controversy under, in this case. No inquiry can be made into the grounds of that decision, it is enough, that it is the settled law. It would be a strange thing to determine that the existence of such a law was a matter of fact for a jury to decide. This court must know, and all the judicial tribunals in the state must know, all the law that is in force or ever was in force in Kentucky, no matter who :made it; and that the judges do know the law is a presumption of the law itself.
■ The introduction to lllackstone’s Commentaries, is perhaps, not so familiar to the learned counsel petition *423 i'ng for the re-hearing, as it was when he Was laying the foundation for his high reputation.
The terms, “or other officer,” might well embrace the deputy marshal. But it is not supposed to be cessary to rest the case on that ground. The marshal has the power of sheriffs. And it is well settled, that the deputy sheriff has all the power of his principal. Nor can a deputy be created witn less than plenary powers. 1
And I do not understand that a deputy must necessarily act in the name of his principal. The deputy sheriffs in Kentucky, are required by a statute\o state the name of the principal. This was not necessary at common law; it is presumed* but whether or not the deputy marshal in this case has stated that he was the deputy marshal of Chapman Coleman, marshal of the district of Kentucky, and as such, in his official character, made the deed of conveyance.
I do understand, that the deputy himself, as deputy marshal, is the proper person to make the deed of conveyance, and t iat the act of conveyance should appear to be the act of the deputy, and not of the principal by the deputy. This is the mode in which all the official acts of the sheriff are stated and determined. No writ was ever returned by any sheriff, A B, principal sheriff, by C D, his deputy. But C D, always says, he executed the writ himself, and he may add, that he was deputy of A B.
There is no distinction between the case of an act the sheriff was required to perform at common law, and acts he is required to perform by statutes. No such distinction-^ found in any book, and no reason for it is perceived. If the estate in the land in this case had been but a term for ten years, it would have been subject to sale at common law, under a JicrL facias against the goods and chattels, but a writing would have been necessary to pass the tide according to the statute of frauds and perjuries; and such a writing, it is supposed, the deputy could execute in the same manner he-made the sale. He himself, acting as deputy marshal with the proper powers of the office.
The fact is, ihe statute in giving the power to the sheriff or marshal to sell and convey, by the same- *424 -words, gives the power to the deputy. The principal and deputy are in contemplation, all one. This is the rule us to all ministerial offices that can be exercised by a and the appointment of deputies, is but the multiplication of officers.
The cases of Marshall, &c. vs. Scott, V J. J. Marshall, 433, are in point, there the cle -k was given the power of taking recognizances, and nothing \va< said of the deputy, and yet the court has held, that the recognizance could he entered into before. One memly styling him-elf deputy clerk, not before, the cLric by his deputy, but before the deputy by himself as deputy.
There is a broad distinction between the conveyance of a deputy sheriff or marshal, and that of an attorney. There is no analogy. Thera it inust he the act of the principal, here the officer is to do it, and whoever has the powers of the office can do the act.
This deed is according to the universal-practice in the country, ever since lands were subjected to the payment of debts. And numerous deeds of the same form have been before this court and sustained, and the/ records can be recurred to, to prove the fact. An example of such a deed as the petitioning counsel would have executed, by the deputy sheriffs and marshals, haff ■never been seen by his opponent.
Per curiam. The petition is overruled.